FILED: 1/21/2014 8:48:42 AM
SHERRI ADELSTEIN
Denton County District Clerk
By: Shelley Mccutcheon, Deputy

14-00365-16

CAUSE NUMBER _____

| | | |
|---|---|---|
| USAA TEXAS LLOYDS COMPANY AS SUBROGEE OF NOAH MILLER | § § § | IN THE DISTRICT COURT OF |
| Plaintiff | § § | |
| V. | § § | DENTON COUNTY, TEXAS |
| LOUISIANA-PACIFIC CORPORATION | § § § | |
| Defendant | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, USAA Texas Lloyds as subrogee of Noah Miller, files this Original Petition against Defendant, Louisiana-Pacific Corporation, and would show as follows:

### DISCOVERY CONTROL PLAN

1. Plaintiff intends for discovery to be conducted under TRCP 190.4 (Level 3).

### CLAIM FOR RELIEF

2. Plaintiff seeks monetary relief, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees, over $500,000 but not more than $1,000,000.

### PARTIES

3. Noah Miller ("USAA's insured" or "Plaintiff's insured") was at all relevant times herein a Texas resident and the owner of real property located at 10891 Stone House Lane, Frisco, Denton County, Texas 75033 ("Subject Property").

4. At all times relevant, Plaintiff USAA Texas Lloyds Company ("USAA") is a Texas corporation and was the insurer of Noah Miller and the insurer of the Subject Property and its contents pursuant to a homeowner's policy of insurance.



5. Defendant, Louisiana-Pacific Corporation, ("Defendant") is a Delaware corporation with its principal place of business located in Nashville, TN and regularly conducts business in the State of Texas. Defendant may be served with process by serving its registered agent as follows:

U.S. Corp. Co.
211 E. 7th Street, Suite 620
Austin, TX 78701

*Issuance of citation is requested.*

## JURISDICTION AND VENUE

6. The court has jurisdiction over the controversy because the damages sought are within the jurisdictional limits of the court.

7. Venue is proper in Denton County because all or a substantial part of the events or omissions occurred in Denton County, Texas.

## FACTS

8. Defendant is in the business of, among other things, designing, manufacturing, assembling, selling and otherwise distributing radiant barrier for the rooftop of homes and commercial buildings. Radiant barrier consists, in short, of a thin piece of aluminum glued to a piece of paper, which in turn, is glued to the underside of wood roof decking. The decking pieces are then connected to each other with metal clips. The idea is that the aluminum will reflect the heat from the outside world and keep the attic cooler in the summer and warmer in the winter. In areas of the country, like Denton County, Texas, that are susceptible to lightning strikes, radiant barrier also poses a severe danger of causing a fire.

9. In or around 2010, radiant barrier that was designed, manufactured, assembled, sold and otherwise distributed by Defendant was installed at the Subject Property.

2



10. On or about January 25, 2012, the radiant barrier caused a fire at the Subject Property during a lightning storm, causing substantial property damage to the Subject Property and its contents.

11. Pursuant to the terms of its insurance policy with Noah Miller, USAA paid for damages caused by the fire.

12. Having made payments to, or on behalf of, its insured, USAA is contractually and/or equitably subrogated to its insured's rights and causes of action and has brought this lawsuit asserting its subrogation rights and causes of action.

## CAUSES OF ACTION

### *(1) Strict Liability in Tort – Design Defect*

13. Plaintiff re-pleads, re-states, and re-alleges the previous paragraphs above as if fully set forth verbatim, and would show the following:

14. Defendant was, at all material times hereto, in the business of designing, manufacturing, and placing into the stream of commerce certain building materials, including the radiant barrier that is the subject of this claim.

15. The radiant barrier was expected to, and did, reach Plaintiff's insured without substantial change in the condition in which it was designed, manufactured, assembled, sold and otherwise distributed by Defendant.

16. The radiant barrier was installed and used in a manner that was reasonably anticipated by Defendant.

17. The radiant barrier was defectively designed at the time it left the possession of Defendant, and such defect was a producing cause of the fire and Plaintiff's damages. The design defect consisted of: a propensity of the radiant barrier to attract lightning; the resulting complete energization of a roof once lightning hits a house; the fact that aluminum is a great conductor of



electrical energy once lightning hits a house; because of the thin strip of aluminum used in radiant barrier, radiant barrier has a relatively high resistivity propensity, i.e., once energized, radiant barrier heats up quickly; once energized, radiant barrier quickly and easily generates heat of ignition for most common building materials; after becoming energized and generating heat of ignition, the radiant barrier becomes one of the first materials ignited and/or ignites other nearby building materials.

18. There was a safer alternative design for the radiant barrier. In reasonable probability, this safer alternative design would have prevented or significantly reduced the risk of the fire and Plaintiff's damages without substantially impairing the product's utility. Moreover, this safer alternative design was economically and technologically feasible at the time the product left the control of Defendant by the application of existing or reasonably achievable scientific knowledge.

19. This design defect rendered the radiant barrier unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.

20. As a producing cause of this design defect, Plaintiff sustained damages in the form of the cost to repair its insured's house, the actual value of damaged household personal property, and additional living expenses.

*(2) Strict Liability in Tort – Manufacturing Defect*

21. For its second cause of action, Plaintiff re-pleads, re-states, and re-alleges the previous paragraphs above as if fully set forth verbatim, and would show the following:

22. Defendant was, at all material times hereto, in the business of designing, manufacturing, and placing into the stream of commerce certain building materials, including the radiant barrier that is the subject of this claim.

4



23. The radiant barrier was expected to, and did, reach Plaintiff's insured without substantial change in the condition in which it was designed, manufactured, assembled, sold and otherwise distributed by Defendant.

24. The radiant barrier was installed and used in a manner that was reasonably anticipated by Defendant.

25. There was a manufacturing defect in the radiant barrier at the time it left the possession of Defendant that was a producing cause of the fire and Plaintiff's damages. Specifically, the radiant barrier deviated in its construction or quality from its specifications or planned output in a manner that rendered it unreasonably dangerous. That is, the radiant barrier was dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics.

26. As a producing cause of this manufacturing defect, Plaintiff sustained damages in the form of the cost to repair its insured's house, the actual value of damaged household personal property, and additional living expenses.

*(3) Strict Liability in Tort – Marketing Defect*

27. For its third cause of action, Plaintiff re-pleads, re-states, and re-alleges the previous paragraphs above as if fully set forth verbatim, and would show the following:

28. Defendant was, at all material times hereto, in the business of designing, manufacturing, and placing into the stream of commerce certain building materials, including the radiant barrier that is the subject of this claim.

29. The radiant barrier was expected to and did reach USAA's insured without substantial change in the condition in which it was manufactured and was manufactured, designed, assembled, distributed and sold by Defendant in the regular course of Defendant's business.



Moreover, the radiant barrier was installed and used in a manner reasonably anticipated by Defendant

30. In its sale and distribution of radiant barrier, Defendant did not give adequate warnings of radiant barrier's dangers that were known, or by the application of reasonably developed human skill and foresight should have been known, and/or Defendant failed to give adequate instructions to avoid such dangers, which failure rendered the radiant barrier unreasonably dangerous as marketed. As such, Defendant's marketing, sale, and distribution of the radiant barrier was defective, which rendered it unreasonably dangerous when put to a reasonably anticipated use.

31. As a producing cause of this marketing defect, Plaintiff sustained damages in the form of the cost to repair its insured's house, the actual value of damaged household personal property, and additional living expenses.

*(4) Negligence*

32. For its fourth cause of action, Plaintiff re-pleads, re-states, and re-alleges the previous paragraphs above as if fully set forth verbatim, and would show the following:

33. The radiant barrier was manufactured, assembled, designed, sold, and otherwise distributed by Defendant in the regular course of Defendant's business.

34. Defendant owed USAA's insured a duty to use ordinary care in the manufacturing, assembly, design, sale and distribution of the radiant barrier.

35. Defendant was negligent and failed to use ordinary care in the manufacture, assembly, design, sale and distribution of the radiant barrier and by negligently failing to warn USAA's insured of said defective condition and design and by manufacturing and designing the radiant barrier so that it was susceptible to causing a fire when energized.

6



36. As a direct and proximate result of the above-mentioned negligence, USAA sustained damages in the form of the cost to repair its insured's house, the actual value of damaged household personal property, and additional living expenses.

*(5) Breach of Implied Warranty of Merchantability*

37. For its fifth cause of action, Plaintiff re-pleads, re-states, and re-alleges the previous paragraphs above as if fully set forth verbatim, and would show the following:

38. Defendant designed, manufactured, assembled, sold, distributed and introduced the radiant barrier into the stream of commerce in the process of its usual and customary business.

39. When Defendant designed, manufactured, assembled, sold, distributed, and introduced the radiant barrier into the stream of commerce, the radiant barrier was not fit for its ordinary purpose because it was designed, manufactured, assembled, sold, distributed and introduced into the stream of commerce by Defendant as defective and unreasonably dangerous and USAA's insured used the radiant barrier for its ordinary purpose and gave Defendant notice that the radiant barrier was not fit for ordinary purpose.

40. As a result of the radiant barrier not being fit for its ordinary purpose, USAA sustained damages in the form of the cost to repair its insured's house, the actual value of the damaged household personal property, and additional living expenses.

*(6) Breach of Express Warranty*

41. For its sixth cause of action, Plaintiff re-pleads, re-states, and re-alleges the previous paragraphs above as if fully set forth verbatim, and would show the following:

42. Defendant is the warrantor of the radiant barrier.

43. Defendant did not meet the conditions of the expressed warranty in that the radiant barrier did not conform to the representations by Defendant that it was fit for use as a radiant barrier

7



because the radiant barrier was designed, manufactured, sold, distributed and introduced into the stream of commerce by Defendant as defective and was susceptible to causing a fire once energized.

44. Plaintiff and its insured notified Defendant of the defective condition of the radiant barrier. Because of Defendant's breach of the expressed warranties, Plaintiff sustained damages in the form of the cost to repair its insured's house, the actual value of the damaged household personal property, additional living expenses, and reasonable attorney's fees.

## JURY DEMAND

45. Plaintiff demands a trial by jury and tenders the appropriate fee.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, USAA Texas Lloyds as subrogee of Noah Miller, respectfully prays that Defendant be cited to appear and to answer herein and, upon final hearing or trial, that the Court enter judgment in favor of Plaintiff against Defendant, in an amount in excess of the minimum jurisdictional limits of this Court, for compensatory damages, costs of court, pre- and post judgment interest at the highest rate allowed by law; attorney's fees, and grant Plaintiff such other and further relief, general or special, at law or in equity, to which Plaintiff may show itself justly entitled.

Respectfully submitted,

DOYEN SEBESTA, LTD., LLP

By: _____

William T. Sebesta
SBN: 00784941
wsebesta@ds-lawyers.com
Randall J. Poelma, Jr.
SBN: 24047823
rpoelma@ds-lawyers.com
450 Gears Road, Suite 350
Houston, TX 77067
Telephone: (713) 580-8900
Fax: (713) 580-8910
ATTORNEYS FOR PLAINTIFF

CERTIFIED A TRUE AND CORRECT COPY OF THE RECORD ON FILE IN MY OFFICE
SHERRI ADELSTEIN
DENTON COUNTY CLERK
By: _____ Deputy Clerk
Date: 2/26/14

8